In re Nelson Grant **HALLAHAN**, d/b/a
Nelson Hallahan and
Associates, Debtor.

Nelson Grant **HALLAHAN**, Appellant,

v.

**NIS CORPORATION** and Ozark
National Life Insurance
Company, Appellees.

No. 89–1279.

United States District Court,
C.D. Illinois.

April 16, 1990.

Gary T. Rafool, Nile Williamson, Peoria, Ill., for appellant.

Mark Zelmer, St. Louis, Mo., Bret Babcock, Peoria, Ill., for appellees.

## ORDER

MIHM, District Judge.

Appellee Ozark National Life Insurance Company (hereinafter Ozark) has at all relevant times been engaged in the business of selling life insurance. Appellee NIS Corporation (hereinafter NIS) is a wholly owned subsidiary of Ozark and is the exclusive selling agent for Ozark.

Appellant Nelson Hallahan began work for Ozark on October 1, 1977 as a sales agent. He became an Ozark manager on July 2, 1981. On that date, all agents for Ozark were offered the option of becoming managers as well as stockholders of NIS. In order to take advantage of this option, the agents were required to enter into a contract with NIS. This contract was explained to the potential managers before any of them signed it.

The relevant part of that contract is a covenant not to solicit, which reads as follows:

> If this Contract is terminated by either party for any reason, Agent agrees that he will not, for a period of four (4) years

from the date of termination, within the county or counties in which Company is located or doing business at the time of termination or within the immediate adjoining counties: ... (iii) Directly or indirectly, for himself or on behalf of any other person or firm, induce or attempt to induce any policyholder of any Insurance Company to cancel, surrender, apply for a policy loan under or to discontinue the payments or premiums on any policy issued by such Insurance Company.

Appellant Hallahan signed the agency contract. As a manager, he had access to policyholder listings of the company. The record reflects that on May 20, 1982, Hallahan was sent a policyholder printout for the entire State of Illinois. On March 8, 1983 and June 1, 1983, Appellant received listings of policyholders of other previously terminated sales agents. Policyholder lists were regarded by Ozark as confidential information. Only managers and home office personnel had access to these lists and those persons knew that the lists were not to be disseminated and had to be returned. The policyholder lists received by Hallahan specifically required that the list be returned to the agency department of Ozark.

On December 5, 1983, Hallahan terminated his agency relationship with Ozark and immediately went to work for a competing insurance company, Connecticut Mutual. It is not disputed that Hallahan immediately began to solicit life insurance business from Ozark policyholders with whom he had had personal contact as Ozark's agent. As a result, a relatively significant number of Ozark policies began to lapse. In March of 1984, Hallahan admitted to an Ozark sales agent that he intended to go after Ozark policyholders with the Connecticut Mutual policies. In addition, the record reflects several Ozark policyholders who testified that they were contacted by the Appellant and that he had either blatantly suggested substituting Connecticut Mutual policies for their existing Ozark policies or otherwise suggested a change in the status of the Ozark policy. Specifically, the record indicates that 246 Ozark policyholders replaced their Ozark policies with Connecticut Mutual insurance policies within a short period of time after Hallahan left Ozark's employ; 22 of those policyholders indicated that they let their Ozark policy lapse due to contact with Hallahan.

At trial, Appellees introduced an actuarial expert who testified that the lost profits incurred by the Appellees as a result of 246 terminated policies totalled $208,111.28.

The bankruptcy court granted Appellees' Motion for Summary Judgment, holding that Appellant had willfully breached the covenant not to solicit, 78 B.R. 547. The bankruptcy court also found that this was a non-dischargeable debt under the Bankruptcy Code because of the willful nature of the breach of contract, 99 B.R. 897. The Court awarded damages in the amount of $208,111.28 plus attorneys' fees, pursuant to a stipulation for $43,723.24. In addition, the bankruptcy court ordered stricken the Appellant's jury trial demand, holding that there is neither a statutory nor a constitutional right to a jury trial in a dischargeability case in bankruptcy court.

Appellant appealed, raising three alleged errors by the bankruptcy court. First, Appellant argues that the bankruptcy court committed reversible error when it granted Appellees' Motion for Summary Judgment on the issue of liability. Second, the bankruptcy court erred in finding that the judgment was non-dischargeable and in ascertaining the amount of damages. Finally, Appellant argues that the bankruptcy court committed error in striking its demand for a jury trial.

### PROCEDURAL BACKGROUND

The case below actually involved two separate proceedings. The first was an action filed by the Appellees against the Appellant in the United States District Court for the Western District of Missouri. In that action, Appellees sought an injunction preventing Appellant from selling Connecticut Mutual policies or any other policies to Ozark policyholders. This action has been dismissed without prejudice.

The second proceeding was an action brought by Appellees against the Appellant

in the Bankruptcy Court for the Central District of Illinois. This adversary proceeding alleged that Appellant breached the covenant not to solicit and intentionally interfered with Appellees' business relationships. Appellees previously had filed a Motion in this Court to withdraw the adversary proceeding from the bankruptcy court and transfer the adversary proceedings to the Missouri District Court. That motion was denied in 1985.

Following the bankruptcy court's grant of summary judgment in favor of the Appellees, the case proceeded to a bench trial on the issue of damages. On the basis of the evidence submitted at trial, the bankruptcy court entered its damage award.

### DISCUSSION

In reviewing the decision of the bankruptcy court, this Court is to affirm factual findings of the bankruptcy court unless they are clearly erroneous, giving due regard to the trial court's opportunity to judge the credibility of the witnesses. As to those issues which present legal questions, the Court's review is *de novo*.

### LIABILITY

In his decision granting the Appellees' Motion for Summary Judgment on liability, the bankruptcy court stated that the issue was whether the covenant not to solicit was valid; if it was, it had clearly been violated. The court looked at Missouri law [1] to determine whether the covenant was reasonably restricted in time and space. The Appellant argues that the covenant not to solicit is unreasonable as to both elements.

Appellant contends that the time limitation of four years contained in the covenant at issue here is unreasonable because Missouri courts have never approved a non-compete clause which was longer than three years (except in the case of physicians). Appellee cites two Missouri cases upholding covenants not to solicit, one of which covered a period of five years and

the other a period of four. *Fred A.H. Garlich's Agency Co. v. Anderson*, 226 S.W. 978 (Mo.App.1920) (five years) and *Alldredge v. Twenty–Five–Thirty–Two Broadway Corp.*, 509 S.W.2d 744 (Mo.App. 1974) (four years, covenant not enforced for other reasons). Thus, Appellant's argument that a four-year period is unreasonable on its face was properly rejected by the bankruptcy court.

Furthermore, a period of four years in the factual circumstances presented here is not unreasonable. Given the length of time an insurance policy is ordinarily in effect and given the apparently necessary personal relationship between an agent and policyholders, the four year period of time serves to protect the legitimate interest which NIS and Ozark had in their customers.

Appellant also argues that the geographic scope of this particular covenant is not reasonably necessary for the legitimate proprietary interest of NIS. The non-compete clause in this case contains a limitation to counties in which Appellees were doing business and the adjoining counties. Appellant argues that since his license to sell insurance was limited to the State of Illinois, the breadth of the geographic protection was unreasonable.

Missouri courts have upheld covenants not to solicit business which have no geographic limit. *See, e.g., Mills v. Murray*, 472 S.W.2d 6 at 12 (Mo.App.1971); *Sigma Chemical Co. v. Harris*, 605 F.Supp. 1253 (E.D.Mo.1985).

In addition, the appropriate analysis in determining the reasonableness of the geographic scope is to look at the needs of the employer in protecting its business. Missouri cases recognize that an employer's interest in its customers may properly be protected by a covenant not to solicit where an employee has more than nominal contact with those customers. In *Mills v. Murray*, 472 S.W.2d 6 (Mo.App.1971), the court found that:

---

**1.** Pursuant to the terms of the agency contract, the parties agree that Missouri law is the applicable law in this case.

Such a restriction we find reasonably necessary to protect [the employer] which hired and paid [the employee] to solicit clients and then, by the necessities of the business, was required to stand aloof while a relationship of confidence developed between [the employee] and the customers of the business, thus enhancing the risk that [the employee] could entice them away when he left.

*Id.* at 11.

In this case, it is clear that Hallahan had such direct personal contact with the customers of NIS and Ozark, that he had the opportunity to develop a personal relationship of trust and confidence with them. In addition, he had access to confidential customer lists of other customers of the company. While Hallahan worked for Ozark, he was paid to develop the good will of the policyholders, an asset which properly belongs to the employer.

Thus, it was certainly not unreasonable for Ozark to seek to protect that good will and its customers from a former employee.

There are two basic flaws in Hallahan's argument that, because he is only licensed in Illinois, the geographic scope of the clause is too broad. First, the record indicates that an insurance agent can sell business anywhere that he becomes licensed. Thus, the fact that Hallahan was only licensed in Illinois at the relevant time does not mean that it was unreasonable for the employer to seek protection broader than that scope. There was nothing except this clause to stop Hallahan from becoming licensed in one of the other 19 states in which Ozark does business and soliciting existing policyholders there. Since Hallahan could have done business anywhere he became licensed and since he had access to Ozark customer lists from all areas in which Ozark did business, the scope contained in the clause is simply not unreasonable.

In addition, the former policyholders who were solicited by Hallahan after he left the employ of Ozark were all within the Illinois district. Thus, the scope as applied to him was certainly not unreasonable.

Appellant's argument that his agency contract is unenforceable as an adhesion contract is rejected. There is absolutely nothing in the record to provide factual support that Hallahan was unaware of the terms of his contract or was coerced into signing it. He could have foregone his new relationship with NIS and remained simply an agent rather than an agent-manager. Accepting a promotion to manager and requiring in return a covenant not to solicit is simply not adhesion. *See, Reed, Roberts Associates, Inc. v. Bailenson,* 537 S.W.2d 238, 241 (Mo.App.1976) (holding that continuation of employment where there is no obligation by either employer or employee supplies adequate consideration for a new employment contract); *U.S.A. Chemical, Inc. v. Lewis,* 557 S.W.2d 15, 24 (Mo.App.1977) (holding that an agency contract is not a contract of adhesion if the employee had the option to forego employment with the employer).

Both parties have argued in their respective briefs the merits of Appellees' claim, contained in Count I of the Complaint, that Appellant also committed the tort of interference with business relationships. Because the bankruptcy court made no finding as to this tort, merely referring to it in passing, and because such a finding was not necessary to his ruling, this Court holds that the matter is not before it. Thus, no ruling on Appellees' alternative theory is forthcoming.

Thus, this Court affirms the bankruptcy court's finding that the covenant not to solicit is enforceable.

DISCHARGEABILITY

After finding that the covenant was enforceable, the bankruptcy court stated that there was no question whether Hallahan's sales of Connecticut Mutual policies to Ozark policy holders were willful and unjustified and therefore malicious. The purpose of this analysis was to determine whether any judgment against Hallahan for breach of the covenant not to solicit was a dischargeable debt. Section 523(a)(6) provides that a discharge does not apply to "any debt ... (6) for willful and malicious

injury by the debtor to another entity or to the property of another entity."

Appellant argues that reckless or knowing disregard does not apply in determining whether conduct was willful and malicious under this section of the Bankruptcy Code. In addition, he argues that since discharge is an exception and the burden is on the creditor to prove each element by clear and convincing evidence, the creditor failed to meet that burden in this case.

Appellant cites a number of bankruptcy cases from across the country which stand for the proposition that reckless or knowing disregard or flagrant breach does not constitute a willful action under § 523. Rather, there must be some intent to harm.

Appellees, on the other hand, argue that this standard of specific intent to harm has been specifically rejected by other courts, including this one. Rather, they suggest that the proper standard is "knowing disregard to the rights of others."

■ The bankruptcy court applied the standard which this Court used in *In re Cerar*, 97 B.R. 447, 451–52 (Bankr.C.D.Ill. 1989) which held that no proof of intent to do harm is required for non-dischargeability. *See also, Pioneer Bank and Trust Co. v. Scotella*, 18 B.R. 975, 977 (Bankr.N.D.Ill. 1982); *United Bank of Southgate v. Nelson*, 35 B.R. 766, 775 (Bankr.N.D.Ill.1983).

■ This Court affirms its prior decision in *In re Cerar*. An intentional breach of a valid and enforceable covenant not to solicit is sufficient proof of willful conduct to make Appellees' claim non-dischargeable under § 523(a)(6). The bankruptcy court's finding that this debt is non-dischargeable is therefore AFFIRMED.

Hallahan also disputes the amount of the debt found by the bankruptcy court, claiming that the evidence relating to Appellees' losses was speculative, unrelated causally, and lacking foundation. In addition, Hallahan claims that the issue of money damages was controlled by the doctrine of *res judicata*.

The Court notes that Appellees' proof of damages was limited to the losses resulting from cancellation of policies by 246 policyholders who shared two common characteristics: Hallahan had been their agent when he was with Ozark, and the cancellations occurred within a very short time after Hallahan left Ozark.

■ Ozark and NIS relied on testimony from a number of experts who testified about lapse rates, mortality rates, average policy retention, interest rates and other factors, concluding that the losses totaled $208,000. Hallahan's general attacks on all this evidence are found by the Court to be specious. First and foremost, loss of future profits is by nature a matter to be proved by means other than detailed and direct proof. *See, H. Vincent Allen v. Weis*, 63 Ill.App.3d 285, 19 Ill.Dec. 893, 379 N.E.2d 765 (1978); *Vendo v. Stoner*, 58 Ill.2d 289, 321 N.E.2d 1 (1974); *M & W Gear Co. v. AW Dynamometer*, 97 Ill. App.3d 904, 53 Ill.Dec. 721, 424 N.E.2d 356 (1981). Inferential proof, as the bankruptcy court accepted here, is proper.

In addition, a requirement of strict proof of lost profits would result in immunizing defendants from the consequences of wrongful conduct. *M & W Gear*, 97 Ill. App.3d 904, 53 Ill.Dec. 721, 424 N.E.2d 356. In particular, as in this case, it would serve to encourage violation of restrictive covenants without fear of meaningful damages. *See, Tower Oil & Technology Co., Inc. v. Buckley*, 99 Ill.App.3d 637, 54 Ill.Dec. 843, 425 N.E.2d 1060 (1981).

Given the testimony of Appellees' experts and given Appellant's complete failure to offer any alternative computation by an expert, this Court affirms the bankruptcy court's finding as to damages.

■ Hallahan argues further that money damages are barred by *res judicata* as a result of the dismissal without prejudice of the injunctive action in Missouri. Such argument is entirely without merit, as a dismissal without prejudice is not a final judgment, a prerequisite for *res judicata* effect. *Sypert v. Miner*, 266 F.2d 196, 198 (7th Cir.1959).

## RIGHT TO JURY TRIAL

Appellant Hallahan also argues that the bankruptcy court committed error when

Hallahan's demand for a jury trial was stricken. Appellant argues that this question is governed by 28 U.S.C. § 1411 which states as follows:

(A) Except as provided in subsection (B) of this section, this chapter and title 11 do not affect any right to trial by jury that an individual has under applicable non-bankruptcy law with regard to a personal injury or wrongful death tort claim.

(B) The district court may order the issues arising under section 303 of title 11 to be tried without a jury.

Appellant also points to Rule 9015(a) of the Rules of Bankruptcy Procedure which provides as follows:

(a) Trial by Jury. Issues triable of right by jury shall, if timely demanded, be tried by jury, unless the parties or their attorneys of record, by written stipulation filed with the court or by an oral stipulation made in open court and entered in the record, consent to trial by the court sitting without a jury.

As a result of these rules, Appellant argues that the bankruptcy court erred by basing its holding on the nature of the proceeding rather than on the nature of the relief sought. Since the relief sought was legal in nature, Hallahan argues he had a right to trial by jury that the bankruptcy court could not take away.

■ Appellees argue, on the other hand, that a dispute regarding the existence of a claim under the Bankruptcy Code is essentially an equitable issue. Although under different circumstances (i.e., not in bankruptcy) Hallahan may have had a jury trial right, he himself invoked the bankruptcy court's protection, thus subjecting himself to the court's equitable power. As a result, he gave up his right to a jury trial.

In addition, the Appellees argue that Hallahan had no constitutional right to a jury trial in this proceeding; nor, according to Appellees, is there any statutory right created by either of the rules relied upon by Hallahan.

Appellees also point out that when this proceeding first arose in the bankruptcy court, they attempted to remove it from the bankruptcy court to this Court. Hallahan opposed the motion to withdraw, arguing that the claims asserted should be heard before the bankruptcy court. This Court agreed with the Appellees and refused to withdraw the reference of the matter from the bankruptcy court. Thus, Appellees argue that Hallahan's own actions frustrated his only opportunity of seeking a jury trial.

■ The Court agrees that issues relating to the existence of a claim are part of the bankruptcy process and are thus triable in equity. In *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966), the Court stated:

[I]n cases of bankruptcy, many incidental questions arise in the course of administering the bankrupt estate, which would ordinarily be pure cases at law, and in respect of their facts triable by jury, but, as belonging to the bankruptcy proceedings, they become cases over which the bankruptcy court, which acts as a court of equity, exercises exclusive control. Thus a claim of debt or damages against the bankrupt is investigated by chancery methods.

*Id.* 382 U.S. at 337, 86 S.Ct. at 477, 13 L.Ed.2d at 401. *See also, Granfinanciera v. Nordberg*, — U.S. —, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989).

■ Hallahan wants to have his cake and eat it too. He selected the bankruptcy forum for this dispute by filing his voluntary petition in bankruptcy. At the time his bankruptcy was filed, the injunctive action in Missouri was pending against him. He opposed removal of the case from the bankruptcy court to this Court and stipulated to dismissal without prejudice of the pending Missouri action. NIS and Ozark necessarily were restricted to pursuing their claim in bankruptcy court. Under the reasoning of both *Granfinanciera* and *Katchen*, a debtor such as Hallahan who invokes the jurisdiction of the bankruptcy court and who opposes removal of a portion of that proceeding from the bankruptcy court cannot be entitled to a jury trial.

The Court also agrees that the United States Constitution provides no right for a

jury trial in this case. The essence of a Seventh Amendment inquiry is whether the underlying issue is legal or equitable in nature. It is clearly established that the right to trial by jury exists only with respect to issues at common law and does not exist with respect to issues tried by a court in its equity jurisdiction. *Ross v. Bernhard,* 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970); *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962); *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959). Proceedings of bankruptcy courts, as noted above, are inherently equitable proceedings.

In *Granfinanciera,* the Supreme Court applied a two step test to determine whether an action seeking damages was a suit at common law for which a jury trial was required. First, the court must determine whether proceedings of that type were traditionally tied to a jury prior to the merger of law and equity. Second, the court must determine whether the nature of the remedy sought was legal or equitable.

While the Appellant argues that the procedure here was a court action seeking damages and therefore was traditionally triable to a jury, the Court disagrees. This proceeding was an action to determine whether NIS and Ozark had a valid claim against the bankrupt and, if so, the amount and dischargeability of that claim. Such proceedings are solely creatures of the Bankruptcy Code and had no existence at common law. Thus, the first prong of the *Granfinanciera* test has not been met. Furthermore, it is clear that the dischargeability or non-dischargeability of a particular claim is a decision made by the bankruptcy court under the equitable powers granted it by Congress. *See, Katchen* (proceedings of bankruptcy courts are inherently equitable); *Thorp Credit, Inc. v. Lee,* 50 B.R. 683 (Bankr.D.Md.1985); *Billebault v. Schmid,* 54 B.R. 520 (Bankr.E.D. Pa.1985).

The mere fact that the relief sought by NIS and Ozark was monetary damages does not necessarily render the action one at law. Every determination by a bankruptcy court of the validity of a claim is in essence a determination of whether a creditor is entitled to monetary damages from the debtor.

Thus, this Court holds that the issues of the validity or existence or amount of a claim are inextricably interwoven with the issue of dischargeability and are therefore within the equitable jurisdiction of the bankruptcy court.

The bankruptcy rules on which Hallahan relied in his appeal grant the Defendant no right to a jury trial. They merely provide for trial by jury if the right already exists and if proper demand is made. In other words, they assume a pre-existing statutory or constitutional right to a jury trial. Neither rule provides an independent right to jury trial, and, as concluded above, there is no pre-existing statutory or constitutional right.

Thus, the bankruptcy court's determination to strike Hallahan's jury trial demand is affirmed.

### ARGUMENT RAISED IN REPLY BRIEF

In its reply brief, Appellant attempts to raise arguments regarding the issue of election of remedies; this issue was argued neither to the bankruptcy court nor in the original appeal brief to this Court. The Court declines to exercise its appellate jurisdiction as it holds that the issue has not been preserved for appeal. Although the Court permitted the parties to submit their briefs on this question, it will not consider any arguments raised therein.

### CONCLUSION

Accordingly, this Court AFFIRMS the bankruptcy court's decisions on liability, non-dischargeability and right to jury trial.