**In re Daniel Dale PATRICK, Debtor.**

**Cheryl Ann PATRICK, Plaintiff,**

**v.**

**Daniel Dale PATRICK, Defendant.**

**Bankruptcy No. 90 B 00239.
Adv. No. 90 A 0272.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

July 16, 1992.

Daniel J. Kramer, Law Office of Daniel J. Kramer, Yorkville, Ill., for Daniel Dale Patrick, debtor-defendant.

John Ruddy, Truemper, Hollingsworth, Wojtecki, Courtin & Ruddy, Aurora, Ill., for Cheryl Ann Patrick, plaintiff.

M. Scott Michel, Chicago, Ill., U.S. Trustee.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on the complaint of Cheryl Ann Patrick ("Cheryl") pursuant to 11 U.S.C. § 523(a)(6) for a determination of the dischargeability of a certain debt owed her by the debtor-defendant, Daniel Dale Patrick ("Daniel"). For the reasons set forth herein, the Court having considered all the pleadings and evidence adduced at trial by way of testimony and exhibits, does hereby find the debt nondischargeable.

## I.  JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(I).

## II.  FACTS AND BACKGROUND

The parties were married in 1970. On August 18, 1986, incidental to a dissolution of marriage proceeding, they entered into a Marital Settlement Agreement (the "Agreement"). In relevant part, the Agreement provided that Cheryl would have the right to a portion of Daniel's pension plan, and that he would receive sole ownership of the former marital home. The Agreement also provided a means by which Cheryl could receive a lump sum settlement in lieu of her rights, with respect to the pension plan, upon Daniel's sale of the marital home. In particular, the Agreement stated:

In the event that the Husband sells the marital home within five (5) years from the date of this Agreement, and in the further event that he nets from the sale a sum equal to or greater than the present value of the Wife's future right to receive her share of the Husband's pension, the Husband shall be obligated to pay to the Wife a sum calculated using the date of the execution of this Agreement as the valuation date and in exchange therefor, receive from the Wife a waiver of any right that she may have to receive any part of the Husband's pension in the future.

To determine the "net" that the husband may receive from the sale of the marital home, the following formula shall be used: From the gross sales price, there shall first be deducted the amount of the first mortgage, unpaid real estate taxes, prorated share of current real estate taxes, real estate brokerage commission, legal fees directly associated with the sale of the real estate, revenue stamps, points, if any, survey, and such other expenses as are customarily paid by a Seller.

Daniel sold the home before the end of the five-year period. He did not inform Cheryl about the sale nor pay her anything in connection with the sale. In fact, on May 19, 1988, Daniel netted cash disbursed from the sale proceeds in the amount of $15,615.07. *See* Exhibit No. 8.

Cheryl testified that the above cited provisions of the Agreement were the subject of prior negotiations between the parties when both were represented by counsel. Those terms were ultimately agreed upon by the parties who both executed same, and were incorporated by reference into the judgment of dissolution of the marriage. According to Cheryl's testimony, she has lived up to her required duties thereunder, and Daniel had paid his obligations thereunder, save the lump sum settlement of her interest in the pension awarded.

In his testimony at trial, Daniel admitted that he had executed the subject Agreement, but contended that he did not carefully read the instant provisions closely. He failed to review the terms and conditions of same prior to the closing of the sale of the former marital house, and he did not advise Cheryl of the closing and disposition of the proceeds. Although he was represented by counsel at the time of the dissolution and Agreement, he did not utilize the services of counsel at either the sale or closing of the former marital home. According to Daniel, he did not realize he had a duty under the terms of the Agreement to remit the portion of the sale proceeds to Cheryl. Rather, he was operating under the assumption that the house, as well as the proceeds thereof, was his, free and clear. In short, Daniel contends that he did not fully read or understand his obligations under the Agreement.

Subsequent to the sale of the home, Cheryl learned of its disposition and had obtained a pre-petition judgment in the state court against Daniel for $9,020.31. This judgment was apparently based on an estimated present value of her rights to Daniel's pension. Before Cheryl was able to recover on that state court judgment, Daniel filed a Chapter 7 petition prompting the institution of the instant adversary proceeding. Daniel scheduled Cheryl's claim as undisputed and unsecured in the amount of $9,000.00, among his other unsecured creditors. Cheryl's claim is the single largest claim scheduled. Cheryl contends that the conditions of the Agreement are met in that: (1) the former marital home was sold within the applicable five-year period; and (2) therefrom, Daniel netted a sum equal to or greater to the then present value of Cheryl's rights in his pension as determined and liquidated by the state court.

Daniel's bankruptcy case and this adversary proceeding were originally assigned to the Honorable David H. Coar who conducted most of the pretrial hearings. He entered an Opinion denying cross motions for summary judgment on September 3, 1991, because the pleadings did not establish the amount of money that Daniel netted from the sale of the marital home. Thus, Judge Coar did not find that there had been a determination of a liquidated amount necessary to trigger Daniel's obligation to Cheryl under the operative terms and provisions of the Agreement.

Effective January 1, 1992, this matter was reassigned to the undersigned and trial was held on April 17, 1992. Although the Court gave counsel for both parties leave to submit post-trial written arguments and supporting memoranda, only Cheryl's counsel has filed a supplemental memoranda within the time allowed. Accordingly, the Court has taken the matter under advisement and now rules as discussed hereafter.

## III. DISCUSSION

### A. DISCHARGEABILITY STANDARDS IN THE SEVENTH CIRCUIT

The party seeking to establish an exception to discharge of a debt bears the burden of proof. *In re Martin,* 698 F.2d 883, 887 (7th Cir.1983). In the Seventh Circuit, the former standard of proof in dischargeability actions involving section 523(a)(6) was one of "clear and convincing evidence." *In re Bogstad,* 779 F.2d 370, 373 (7th Cir.1985). Recently, however, the United States Supreme Court has indicated that a lower standard of proof applies to all exceptions to discharge under section 523, that being a mere "preponderance of the evidence." *Grogan v. Garner,* —— U.S. ——, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). The discharge provisions of section 523 are construed strictly against the creditor and liberally in favor of the debtor. *In re Pochel,* 64 B.R. 82, 84 (Bankr.C.D.Ill.1986).

### B. 11 U.S.C. § 523(a)(6)

Section 523(a)(6) provides:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

11 U.S.C. § 523(a)(6).

In order for a debt to be held nondischargeable under section 523(a)(6),

the creditor has the burden of proving that the injury resulted from an act that was both willful and malicious. *In re Kimzey*, 761 F.2d 421, 424 (7th Cir.1985); *United States Bank of Southgate v. Nelson*, 35 B.R. 766, 768 (N.D.Ill.1983); *In re Hopkins*, 82 B.R. 952, 953 (Bankr.N.D.Ill.1988). The term "willful" means "deliberate or intentional," and "malicious" means "wrongful and without just cause for excuse even in the absence of personal hatred, spite or ill will." *In re Condict*, 71 B.R. 485, 487 (N.D.Ill.1987); *In re Meyer*, 7 B.R. 932, 933 (Bankr.N.D.Ill.1981). The debtor need not act with ill will or malevolent purpose towards the injured party. *In re Hallahan*, 78 B.R. 547, 550 (Bankr. C.D.Ill.1987), *aff'd*, 113 B.R. 975 (C.D.Ill. 1990), *aff'd*, 936 F.2d 1496 (7th Cir.1991). Thus, "a wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse, may constitute a willful and malicious injury." *See* 3 *Collier on Bankruptcy*, ¶ 523.16 at 523–129 (15th ed. 1992). The phrase "willful and malicious injury" encompasses "willful and malicious conversion." *In re Meyer*, 7 B.R. at 933. Implied or constructive malice will be found if the debtor injures the creditor by an intentional or deliberate act, or the debtor commits this act knowing it will harm the creditor's interest in property. *See In re Cerar*, 97 B.R. 447, 452 (C.D.Ill. 1989).

From the foregoing testimony, the Court can reasonably infer and find that Daniel knew, or should have known, that Cheryl would be injured by his sale of the former marital home and disposition of its sale proceeds to other creditors and parties because Cheryl, under the Agreement and dissolution, had an express interest therein. Daniel's expending all the money he received at closing constitutes conversion because it was an unauthorized act by which Cheryl was deprived of her awarded interest in the property. *See* 35 Illinois Law and Practice, *Trover and Conversion*, §§ 2, 3 and 7 (1958 and 1991 Supp.) and cases cited therein. The fair market value of the converted collateral is the appropriate measure of damages for conversion. *In re Iaquinta*, 98 B.R. 919, 925 (Bankr.N.D.Ill.1989); *In re Krause*, 44 B.R. 159, 163 (Bankr.N.D.Ill.1984).

Daniel's actions were willful because they were deliberate or intentional, and they were also "malicious" under the construction taken in *Condict* as followed by *In re Dvorak*, 118 B.R. 619 (Bankr. N.D.Ill.1990). His actions were wrongful and without just cause or excuse even though there is no indication of any personal hatred or ill will towards Cheryl. The fact that either Daniel forgot or turned a blind eye to the express terms of the Agreement, which he signed, and to which he is bound, is not just cause or a legitimate excuse. Indeed the testimony was that he utilized some of the net sale proceeds to pay other unsecured creditors, rather than Cheryl. Even if Daniel, at the time of the subsequent sale of the marital home, did not have a present recollection of the terms and conditions of the Agreement, that fact is an insufficient defense. His actions in disposing of the sale proceeds and not remitting any of same to Cheryl constituted conversion and certainly resulted in injury to her. Moreover, his actions were in disregard of his express duty to pay her under the Agreement.

## IV. CONCLUSION

For the foregoing reason, the Court hereby finds that the subject debt owed by Daniel to Cheryl is nondischargeable pursuant to section 523(a)(6).

This Opinion serves as findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.