**In re Michael P. GRYNEVICH, aka/dba Automotive Performance, Debtor.**

**Laura M. GRYNEVICH, Plaintiff,**

v.

**Michael P. GRYNEVICH, Defendant.**

**Bankruptcy No. 92 B 19553.
Adv. No. 93 A 01324.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Sept. 27, 1994.

4. Indeed, Mt. Calvary concedes that the mere cashing of the check alone does not qualify as acceptance. (Response at 9).

Richard B. Taylor, Joliet, IL, for Laura M. Grynevich, plaintiff.

Edward P. Graham, Offices of Daniel J. Adler, Joliet, IL, for Michael P. Grynevich, defendant-debtor.

### MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

These matters come before the Court on Count I of the complaint of Laura M. Grynevich ("Ms. Grynevich") against Michael P. Grynevich (the "Debtor") pursuant to 11 U.S.C. § 523(a)(6) for the determination of the dischargeability of a certain debt, and on the Debtor's petition for payment of his attorney's fees pursuant to 11 U.S.C. § 523(d).

For the reasons set forth herein, the Court having considered the pleadings and evidence adduced at trial by way of testimony and exhibits, does hereby find the debt nondischargeable under section 523(a)(6) and denies the Debtor's petition for attorney's fees.

### I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain these matters pursuant to 28 U.S.C. § 1334 and Local General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. They constitute core proceedings under 28 U.S.C. § 157(b)(2)(I).

### II. FACTS AND BACKGROUND

Many of the facts, background and history of this matter are contained in an earlier Opinion of the Court. *See Grynevich v. Grynevich,* 1994 WL 263489 (Bankr.N.D.Ill. May 16, 1994). In that Opinion, the Court held that the underlying debt owed Ms. Grynevich was dischargeable under 11 U.S.C. §§ 523(a)(4) and 523(a)(5), and disposed of Counts II and III of the instant complaint. Because material issues of fact precluded proper entry of summary judgment under Count I, a trial was held. The ultimate issue is whether the Debtor's admitted failure to keep current all mortgage payments, requisite repairs, and maintenance to the former marital home of the parties (the "Property") caused willful and malicious injury to Ms Grynevich's equity interest in the Property. Pursuant to their marital settlement agreement (the "Agreement"), dated November 13, 1990, incorporated into the February 26, 1991 judgment of dissolution (the "Judgment") of their marriage, Ms. Grynevich was to receive up to $40,000.00 equity from the sale, but received only $24,471.84. *See* Plaintiff's Exhibit A, pp. 6–7 and Exhibit B.

The Property was sold on December 6, 1991. As a result of the Debtor's undisputed failure to make the requisite payments, monies were debited from Ms. Grynevich's net proceeds paid at the sale closing of the Property. *See* Plaintiff's Exhibit B. Ms. Grynevich subsequently initiated contempt proceedings in the Circuit Court of the Twelfth Judicial Circuit, Will County, Illinois. That court heard testimony and evidence, and found the Debtor to be in willful indirect contempt of court for failure to comply with the terms and condition of the Agreement. *See* Plaintiff's Exhibit C, pp. 29–30. The state court entered judgment against the Debtor in the amount of $21,634.41. *See* Plaintiff's Exhibit D. The Debtor's defense is that his failure to make the requisite pay-

ments was the result of his failing auto repair business that was his sole source of income. Additionally, the Debtor contends that federal and state taxing authorities levied on his bank account, and his other creditors were pressing him for payment of their debts which further precluded him from making the payments.

The Debtor had opened his own business in 1987. Ms. Grynevich testified that prior to the dissolution the Debtor did not indicate he had any trouble making the payments with respect to the Property. Some months after the dissolution she was advised that the Property was in foreclosure, and was then advised by the Debtor that he was having cash flow problems. It is undisputed that the Debtor was experiencing financial problems during the period from February 26, 1991 to December 6, 1991. *See* Debtor's Group Exhibit Nos. 4, 5 and 6. The Debtor made some, but not all, repairs to the Property. *See* Debtor's Exhibit No. 8. In Ms. Grynevich's opinion, the Debtor could not properly handle his checking account. He had written numerous NSF checks to other creditors anticipating sufficient income to cover those checks. *See* Debtor's Group Exhibit Nos. 1 and 2. His financial problems were apparently compounded by his dyslexia and alcohol abuse.

The Debtor testified that he was aware of his obligations under the Agreement and the Judgment. The Debtor stated that he had several conferences with federal and state taxing authorities regarding his delinquent tax payments and deposits. The taxing authorities were threatening to shut down the business and seize its assets. The Debtor was able to keep his business operating in part through monies he obtained from his parents, which were utilized to pay down the taxes and ongoing operational expenses. *See* Debtor's Exhibit No. 9. The Debtor's financial situation deteriorated to the point where his landlord would take only cash or certified funds for rent because of prior NSF checks. *See* Debtor's Group Exhibit No. 6. The Debtor stated that he was essentially on a COD basis with his suppliers and vendors.

As a result, the Debtor testified that he was severely depressed, and was also attempting to deal with an alcohol abuse problem, and the illness of his son.

According to the Debtor, during the relevant period, he made no extravagant purchases, only paid for basic, personal necessities and amounts necessary to keep his business operational. He admitted that after February, 1991 he made no mortgage payments on the Property. He contended that every time he attempted to accumulate money to make payments on the mortgage, the taxing authorities levied on his available funds. Levies were served on March 13 and May 30, 1991. *See* Debtor's Group Exhibit 3. The Debtor paid other creditors, however, and made his child support payments under the Agreement.

The Debtor testified that he was trying to keep up with all his various obligations as best he could. Although he had high hopes of turning things around immediately after the dissolution, his cutbacks in expenditures in connection with his business did not free up sufficient proceeds to enable him to make any mortgage or utility payments on the Property. He did not reconcile his checkbook due to his own neglect and problems he had with his former bookkeeper. The Debtor was writing checks without knowing whether they would clear when drawn and presented against his checking account. In 1991, his business grossed between $325,000–$350,000 from which he personally drew a net taxable income of $19,000–$20,000. He has not sought to borrow additional monies from his parents because of their age, and he has no source of income other than his auto repair business. The Debtor admitted that he was under no other court order to make payments on any of his other debts to any other creditors.

### III. *APPLICABLE STANDARDS*

The party seeking to establish an exception to discharge bears the burden of proof. *In re Martin*, 698 F.2d 883, 887 (7th Cir.1983). The burden of proof under sec-

tion 523 is a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286–287, 111 S.Ct. 654, 659–60, 112 L.Ed.2d 755 (1991). The discharge provisions of section 523 are construed strictly against the creditor and liberally in favor of the debtor. *In re Pochel*, 64 B.R. 82, 84 (Bankr.C.D.Ill.1986). Section 523(a)(6) provides:

> (a) A discharge under ... this title does not discharge an individual debtor from any debt—

>> (6) for willful and malicious injury caused by the debtor to another entity or to the property of another entity.

11 U.S.C. § 523(a)(6).

■ In order for a debt to be held nondischargeable under section 523(a)(6), the creditor has the burden of proving that the injury resulted from an act that was both willful and malicious. *Dornik v. Maurice*, 138 B.R. 890, 896 (Bankr.N.D.Ill.1992), *aff'd*, 1992 WL 308535 (N.D.Ill. Oct. 19, 1992), *aff'd*, 21 F.3d 767 (7th Cir.1994) (quoting *In re Kimzey*, 761 F.2d 421, 424 (7th Cir.1985)); *United Bank of Southgate v. Nelson*, 35 B.R. 766, 768 (N.D.Ill.1983); *Taradash v. Pokorny*, 143 B.R. 179, 182 (Bankr.N.D.Ill.1992); *In re Dvorak*, 118 B.R. 619, 627 (Bankr. N.D.Ill.1990); *In re Hopkins*, 82 B.R. 952, 953 (Bankr.N.D.Ill.1988). The term "willful" means "deliberate or intentional," and "malicious" means "wrongful and without just cause or excuse even in the absence of personal hatred, spite or ill will." *In re Condict*, 71 B.R. 485, 487 (N.D.Ill.1987); *see also In re Meyer*, 7 B.R. 932, 933 (Bankr.N.D.Ill.1981).

■ Courts have consistently used this definition of willful. *See, e.g., In re Scarlata*, 979 F.2d 521, 527 (7th Cir.1993); *In re McGuffey*, 145 B.R. 582, 585–86 (Bankr. N.D.Ill.1992); *In re Iaquinta*, 98 B.R. 919, 924 (Bankr.N.D.Ill.1989). The Seventh Circuit has not yet defined the term "malicious" for purposes of section 523(a)(6). This Court, however, adheres to the liberal definition of "malicious" which includes implied or constructive malice as well as actual malice. *See McGuffey*, 145 B.R. at 585–87. The

debtor need not act with ill will or malevolent purpose towards the injured party. *In re Hallahan*, 78 B.R. 547, 550 (Bankr.C.D.Ill. 1987), *aff'd*, 113 B.R. 975 (C.D.Ill.1990), *aff'd*, 936 F.2d 1496 (7th Cir.1991). Thus, a wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse, may constitute a willful and malicious injury. Moreover, the Seventh Circuit has stated that to except a debt from discharge under section 523(a)(6), the creditor must show that the debtor knew his acts would automatically or necessarily cause the creditor's injury. *Scarlata*, 979 F.2d at 526. Implied or constructive malice will be found if the debtor injures the creditor by an intentional or deliberate act, or the debtor commits this act knowing it will harm the creditor's interest in property. *See In re Cerar*, 97 B.R. 447, 452 (C.D.Ill.1989).

## IV.  *DISCUSSION*

■ From the foregoing testimony and documentary evidence, the Court finds by a preponderance of the evidence that the Debtor knew that Ms. Grynevich's interest in the Property would be injured by his failure to pay the requisite mortgage and other loans secured by it, the utility and other bills, and the maintenance. His payments made to his other unsecured creditors were to the detriment of Ms. Grynevich's equity interest in the Property. The Debtor's actions were "willful" as found by the state court in the civil contempt proceeding because they were deliberate and intentional. That finding is entitled to be given full faith and credit pursuant to 28 U.S.C. § 1738. That determination, however, did not decide whether the Debtor's actions were "malicious" under section 523(a)(6).

The Court finds his conduct was "malicious" under the construction taken by *Condict*, 71 B.R. at 487. The Debtor's willful failure to make the court ordered payments for the benefit of Ms. Grynevich was without just cause or excuse, even in the absence of any personal hatred, spite or ill will towards Ms. Grynevich. *See Dvorak*, 118 B.R. at 627. The fact that the Debtor, on three occasions

in March and May, 1991, had his bank account levied on by the taxing authorities for a total of $50,620.47 did not exhaust all his income earned from February 1991 through December 1991. On numerous other dates, the Debtor drew checks payable to his other creditors. Many of those checks were paid and some were returned for insufficient funds. *See* Debtor's Group Exhibit No. 2. Payment to his other unsecured, but preferred, creditors in order to keep his business operational is not just cause or a legitimate excuse for the Debtor's failure to comply with the court ordered payments under the Agreement and the Judgment. The undisputed facts as displayed in Debtor's Group Exhibit No. 2 are that the Debtor utilized much of his approximately $325,000–$350,000 1991 gross income to pay his other unsecured creditors rather than Ms. Grynevich. Certainly, the Debtor had to know that his failure to make the payments would "necessarily produce harm" to Ms. Grynevich.

■ Even if the Debtor, subsequent to the dissolution, was suffering from personal, family, and medical problems, and continued to abuse alcohol, such facts are insufficient defenses. His actions and omissions with regard to the Property were in disregard of his express duty under the Agreement and Judgment. The Court has previously held that a debtor's failure to comply with an agreed marital settlement by which the non-debtor's spouse was to receive a lump-sum settlement in lieu of a share of pension plan upon sale of the former marital home was nondischargeable under section 523(a)(6). *See In re Patrick,* 143 B.R. 200 (Bankr. N.D.Ill.1992). The Debtor's knowing and intentional failure to satisfy the court ordered property settlement obligations here should produce the same functional result as the debtor's actual conversion of sale proceeds at closing that occurred in *Patrick.* In both cases, the nondebtor spouse was deprived of an interest in property through willful and malicious acts (here omissions) of the debtor who intentionally violated the terms of a settlement agreement without just cause or adequate excuse.

Other courts have held that a debtor's conversion of a former spouse's property is nondischargeable under section 523(a)(6). *See, e.g., In re Berman,* 125 B.R. 74 (Bankr. E.D.N.Y.1991); *In re Reid,* 149 B.R. 669, 672 (Bankr.D.Kan.1992); *In re Dey,* 31 B.R. 567, 568–569 (Bankr.W.D.N.Y.1983). Moreover, several courts have found that a debtor's failure to remit a former spouse's share of a military retirement pension constituted a nondischargeable debt under section 523(a)(6). *Russell v. Russell,* 141 B.R. 107, 110–111 (Bankr.W.D.La.1992); *In re Thomas,* 47 B.R. 27 (Bankr.S.D.Cal.1984). As *Thomas* aptly noted, the fact that an obligation which may be dischargeable under section 523(a)(5) because in the nature of a property settlement, does not bar exception from discharge under another subsection of section 523 where such an independent basis can be shown to exist. *Thomas,* 47 B.R. at 34.

The Debtor cites *American Honda Finance Corp. v. Grier,* 124 B.R. 229 (Bankr. W.D.Tex.1991) for the proposition that the Debtor's failure to make the payments on the Property was not malicious conduct. The Court finds this case distinguishable from the facts at bar. In *Grier,* the debtor sold inventory of his floor plan financier and paid other creditors in violation of a security agreement. The court found this "willful" because the debtor made a conscious decision to pay one creditor over another. The court, however, did not find this conduct "malicious" because the debtor's decision came from a long-standing relationship between him and the creditor which allowed the debtor to modify the original payment structure. The business relationship between the debtor and creditor was such that neither the debtor nor the creditor expected the monies received from the sale of the inventory to be immediately remitted to the creditor. This is not the situation in the instant case. Thus, *Grier* is inapposite.

■ The Debtor seeks attorney's fees and costs under section 523(d) which provides:

If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

11 U.S.C. § 523(d).

The Debtor contends that Ms. Grynevich was not justified in pursuing the instant adversary proceeding. Accordingly, the Debtor seeks an award of attorney's fees for fifty-six hours of time at $110.00, plus costs of $697.63, incidental to the investigation and defense of this adversary proceeding, for a total of $6,857.63. Although the Debtor was successful in obtaining summary judgment on Counts II and III of the complaint, those counts were predicated on sections 523(a)(4) and 523(a)(5). Count I was solely predicated on section 523(a)(6).

■ Relief to a debtor under section 523(d) is limited to the case where a creditor requested the determination of dischargeability of a consumer debt under section 523(a)(2). The instant adversary proceeding, however, was never based on section 523(a)(2). The legislative history of section 523(d) makes it clear that awards of actual damages, as well as appropriately assessed punitive damages, costs and fees are awarded in consumer cases, where a creditor has filed a proceeding to determine the dischargeability of a debt under section 523(a)(2). The stated purpose of 523(d) is "to discourage creditors from initiating false financial statement exception to discharge actions in hopes of obtaining a settlement from an honest debtor anxious to save attorney's fees. Such practices impair the debtor's fresh start." H.R.Rep. No. 595, 95th Cong., 1st Sess. 365 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 80 (1978) U.S.Code Cong. & Admin.News 1978, pp. 5787, 5866, 6321.

Thus, section 523(d) is inapplicable to the matter at bar. There is no statutory authority to award the requested attorney's fees, nor is there any showing of aggravated conduct on the part of the Ms. Grynevich. *See Berman*, 125 B.R. at 77. The "American Rule" on attorney's fees applies, and in cases based upon or involving federal law, attorney's fees ordinarily are not recoverable, absent a specific statutory authority or aggravated conduct. *See Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975).

## V. CONCLUSION

For the foregoing reasons, the Court finds the unpaid debt owed Ms. Grynevich by the Debtor is nondischargeable pursuant to section 523(a)(6). The Debtor's petition for payment of attorney's fees and costs is denied.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.