In re Robert J. MARKOWSKI, and Anne Markowski, Debtor.

**WHEEL LEASING CORPORATION, Plaintiff,**

v.

**Robert J. MARKOWSKI and Anne Markowski, Defendants.**

**Bankruptcy No. 82–01628.
Adv. No. 82–1116 BKC JAG A.**

United States Bankruptcy Court, S.D. Florida.

May 20, 1983.

Alan J. Kluger, Miami, Fla., for plaintiff.

Sylvester Adair, Homestead, Fla., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JOSEPH A. GASSEN, Bankruptcy Judge.

Plaintiff, WHEEL LEASING CORP., filed an adversary proceeding to determine the dischargeability of a debt owed to it by the Debtors, ROBERT J. MARKOWSKI and ANNE L. MARKOWSKI (hereinafter "MARKOWSKI"). The MARKOWSKIS were shareholders and officers in a corporation known as Adventures, Inc. Adventures, Inc. was doing business as Tahiti Village, a restaurant and resort in the Florida Keys. During September, 1980, the MARKOWSKIS desired to purchase the vessel "The River Queen" from a third party. The sale price for The River Queen was approximately One Hundred Thousand Dollars ($100,000). Neither Adventures, Inc. nor the MARKOWSKIS had the necessary funds and they looked to Plaintiff, WHEEL LEASING CORP., (hereinafter "WHEEL") to aid in the acquisition of the vessel. Pursuant to the MARKOWSKIS' request, WHEEL issued a cashier's check in the amount of Thirty Thousand Dollars ($30,000) to the seller and Adventures, Inc. jointly. All parties intended that title would go to WHEEL, and pursuant to this expectation, the MARKOWSKIS issued a Quit-Claim Deed and Bill of Sale, transferring any right, title and interest that the MARKOWSKIS would acquire in the subject vessel. WHEEL then issued a lease on the subject vessel to Adventures, Inc., the terms of which provided that Adventures, Inc. would make monthly lease payments to WHEEL in addition to payments to the seller on a first mortgage held by the seller. The MARKOWSKIS personally guaranteed the lease payments. WHEEL filed a UCC 1 Financing Statement. The lease had no provisions for the Debtors to acquire the vessel at the conclusion of the lease.

Several payments were made on the lease before certain complications arose. The business was encountering financial difficulties and a fire on the vessel in addition to other vessel related expenses created a need for the Debtors to raise additional funds.

Notwithstanding the fact that Debtors had issued a Bill of Sale and Quit-Claim Deed to The River Queen, the MARKOWSKIS, on or about April 20, 1981, represented to Southeast Bank that they were the sole owners of the vessel, "The Tahiti Queen". The Tahiti Queen and The River Queen were in fact the same vessel. Based upon the false representations of the MARKOWSKIS, Southeast Bank lent Adventures, Inc. One Hundred Fifty-Two Thousand Four Hundred Sixty-Six Dollars ($152,466.00), and obtained and recorded a first preferred mortgage on the vessel, "The Tahiti Queen". The MARKOWSKIS personally guaranteed the promissory note given to Southeast Bank. At trial, Mr. MARKOWSKI admitted that he and his wife executed the promissory note and granted to Southeast First National Bank of Miami the first preferred mortgage on the vessel. He further admitted that he did not notify WHEEL of these actions or attempt to join WHEEL in this financing scheme. He admitted that at the time he issued the note and mortgage, he was aware that he had already executed the Bill of Sale and Quit-Claim Deed to WHEEL.

WHEEL contends that the Debtors herein are not entitled to a discharge since their conduct constitutes willful and malicious injury by the Debtors to the property of another entity under 11 U.S.C. § 523(a)(6), and that the MARKOWSKIS are personally liable for the debt since they guaranteed the payments of the lease.

The MARKOWSKIS contend that the transaction between Adventures, Inc. and WHEEL was not a "true lease" but actually a secured loan transaction. While the documents on their face, appear to classify this transaction as a true lease, the President of WHEEL, William Heiden, testified that it was his intention at the conclusion of the lease to abandon the vessel to Adventures, Inc. As such, this Court is inclined to find that the transaction was not, in fact, a true lease but a secured transaction. The Court need not, however, reach this point since application of the principles under § 523(a)(6) to either conclusion would necessitate the same result. If the transaction was in fact a true lease, then the "property" that was injured pursuant to § 523(a)(6) was WHEEL's ownership interest in the vessel. If the transaction was in fact a secured transaction, then the "property" that was injured by the Debtors' actions was WHEEL's interest in the collateral which was involuntarily subordinated to the bank mortgage.

§ 523(a)(6) provides in pertinent part that:

A discharge . . . . does not discharge an individual debtor from any debt—for willful and malicious injury by the debtor . . . . to the property of another entity . . .

In *Pioneer Bank & Trust Co. v. Scotella, In re Scotella*, 18 B.R. 975 (Bkrtcy.N.D.Ill. 1982), the debtor sold a boat in which Plaintiff, Pioneer Bank and Trust Company, held a security interest, without notice to or consent from the bank. The Court in *Scotella* stated that:

Pursuant to § 523(a)(6), however, a claim founded only upon a technical conversion does not render a debt non-dischargable. (Citations omitted). There must be a willful and malicious conversion. The word "willful" means "deliberate and intentional". (Citations omitted). Scotella admitted that he sold the boat. This intentional act by Scotella deprived Pioneer of its secured rights. Thus, Scotella's act was willful as defined under § 523(a)(6). 18 B.R. 976–7.

As in *Scotella, supra,* debtor herein admitted at trial that at the time he issued the note and mortgage, he was aware that he had already given away his interest through a Bill of Sale and Quit-Claim Deed to WHEEL. As such, the MARKOWSKIS' acts were willful, as defined under § 523(a)(6).

Further, this Court finds that the actions of Debtors herein were "malicious" as defined under § 523(a)(6) and the cases promulgated thereunder. In *Scotella, supra,* the Court stated:

'Malicious' as used in § 523(a)(6) means 'wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill will' (Citations omitted). 'A claim founded upon a technical conversion with conscious intent to violate the rights of another and without mistake is non-dischargeable.' (Citations omitted). *Scotella,* 18 B.R. at 977.

The actions by the MARKOWSKIS in representing to Southeast Bank that they were the owners of the vessel and in obtaining a mortgage on the vessel constitutes willful and malicious injury to the property of another entity under § 523(a)(6). Therefore, the debt to Plaintiff is non-dischargeable.

In accordance with BR 921(a), a separate final judgment incorporating these findings and conclusions is being entered this date.