**In re Richard KARPINSKI, Debtor.**

**Maureen KARPINSKI, Plaintiff,**

**v.**

**Richard KARPINSKI, Defendant.**

**Bankruptcy No. 91–09113–R.**
**Adv. No. 91–0926–R.**

United States Bankruptcy Court,
E.D. Michigan, S.D.

Aug. 21, 1992.

Richard Page, Southfield, Mich., for plaintiff.

Michael Stevenson, UAW–Legal Services, Pontiac, Mich., for defendant.

## SUPPLEMENTAL OPINION

STEVEN W. RHODES, Bankruptcy Judge.

On June 9, 1992, this matter was tried before the court on Mrs. Karpinski's complaint to hold certain obligations nondischargeable under 11 U.S.C. § 523(a)(5). At the conclusion of the trial, the Court determined that the obligations were nondischargeable. This opinion supplements the decision given in open court at that time.

### I.

In 1964, the parties to this adversary proceeding were married. In August, 1989, Mr. Karpinski filed for divorce, and a judgment of divorce was entered on April 19, 1990. At the time of the divorce, the marital home had been refinanced for $55,-000. The judgment of divorce provided that the proceeds of the mortgage would be distributed as follows: Twenty-five thousand dollars would be paid to Mr. Karpinski, to be applied to and used for the payment of various debts [1]; a portion of the proceeds would be used to pay off other debts [2]; and any remaining proceeds would be given to Mrs. Karpinski, free and clear of any interest of the debtor.[3] The marital home was awarded to Mrs. Karpinski.

The judgment also provided that Mr. Karpinski would pay 45% of the total monthly mortgage payments until the loan was paid in full or the property was sold. Upon the sale of the property, Mr. Karpinski agreed to pay $25,000 to Mrs. Karpinski, less any sums paid by him in reduction of the principal balance of the mortgage.

The divorce decree was carried out according to its terms, except that Mr. Karpinski did not use his share of the proceeds to pay off any debts. Instead, he used the money to buy a truck and a house.

On July 31, 1990, Mr. Karpinski filed a chapter 7 petition in bankruptcy. On November 1, 1991, Mrs. Karpinski filed this adversary proceeding asserting that the debtor's obligations to her under the judgment of divorce are nondischargeable under § 523(a)(5).

At trial, Mrs. Karpinski testified that she is 49 years old, and currently attending school to become a medical administrative assistant. Her expected salary range is from $6 to $8 per hour. She and the debtor were married for 25 years, of which she worked full time for 10 years. After their son was born, she either did not work, or

---

1. Mr. Karpinski was to use that money to pay off the following creditors: Comerica Bank–Mastercard, Hudsons, Discover Card, Shell Oil, and Chase Education Finance Center. He was to hold Mrs. Karpinski harmless for the payment of these debts.

2. The divorce decree provided for the payment of the following debts: the first mortgage held

by Central Mortgage Corporation, the second mortgage held by Michigan National Bank, the home improvement loan held by First Federal Savings Bank & Trust, and the car loan held by First of America.

3. Mrs. Karpinski received approximately $5,500.

worked part-time. For 19 years, she never made more than $7,000 or $8,000 in one year. At the time of the divorce, she was laid off. She is presently unemployed, and receives governmental assistance of $140 every two weeks, and food stamps. She testified that she is unable to make the mortgage payment on her home without the debtor's assistance. Mrs. Karpinski also testified that she intended the debtor's obligation to be in the nature of support, and that the debtor also had this intention. Her belief is based on the fact that she cannot make any of the payments herself, and the debtor knew this at the time of the divorce.

Dawnn Gruenburg, Mrs. Karpinski's divorce attorney, testified that at the time of the divorce, Mrs. Karpinski was unable to support herself. She testified that in her opinion, Mrs. Karpinski was a candidate for alimony, support or maintenance due to the length of the marriage, the disparity of income, and Mrs. Karpinski's employment history. She also testified that the divorce settlement provided for Mrs. Karpinski's support and maintenance. She stated that everyone knew that Mrs. Karpinski could not support herself. The divorce settlement did not specifically provide for alimony because the debtor could not stand the word, "alimony". Nevertheless, the debtor assumed payments which Mrs. Karpinski could not afford to make, and the debtor received the same tax advantages that he would have received by paying alimony.

The debtor testified that he never intended to pay support or alimony to his ex-wife. He viewed the agreement to pay part of the mortgage payment as a property settlement. At the time of the divorce, he needed money. He viewed the refinancing of the marital home, and his receipt of $25,000 from the refinancing, as a loan, which he was repaying by assuming 45% of the mortgage payment. He also testified that if he failed to pay his share of the mortgage payment, his ex-wife probably could not make the full payment by herself.

Sheldon Greenblatt, the debtor's divorce attorney, testified that at the time of the divorce, the debtor was unwilling to pay any alimony. The debtor did not want to commit to a continuing support obligation.

## II

Section 523(a)(5) of Title 11 provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 402(a)(26) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State); or

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

■ The plaintiff bears the burden of proving the facts necessary to support a judgment of nondischargeability under § 523(a), by a preponderance of the evidence. *Grogan v. Garner*, — U.S. —, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

There are two decisions from the United States Court of Appeals for the Sixth Circuit which construe this provision of the Bankruptcy Code, *In re Calhoun*, 715 F.2d 1103 (6th Cir.1983); and *In re Singer*, 787 F.2d 1033 (6th Cir.1986).

■ In *Calhoun*, the debtor agreed to assume various loan obligations, and to hold his wife harmless for the payment of those debts. The court set forth a three part test to determine whether a given obligation under a divorce judgment should

be held nondischargeable under § 523(a)(5). First, the bankruptcy court must "ascertain whether the state court or the parties to the divorce *intended* to create an obligation to provide support." 715 F.2d at 1109. Second, the court must inquire whether the obligation "has the *effect* of providing the support *necessary* to ensure that the daily needs of the former spouse and any children of the marriage are satisfied." *Id.* Third, the court must "determine that the amount of support represented by the assumption is not so excessive that it is manifestly unreasonable under traditional concepts of support." *Id.* at 1110. All three elements must be satisfied for the court to hold that an obligation is nondischargeable under § 523(a)(5).

### III.

With respect to the first part of the *Calhoun* test—the intent element—it is clear that *both* parties (or the divorce court) must intend to create a support obligation. *In re Smith*, 131 B.R. 959, 962 (Bankr.E.D.Mich.1991).

In this case, Mr. Karpinski contends that he never intended to undertake an obligation to provide support, and that throughout the divorce proceeding, he adamantly refused to enter into any alimony or support obligation to his wife. He asserts that his adamance ultimately resulted in a divorce judgment which bars alimony or support, and strictly divides the property between the parties.

Mrs. Karpinski, on the other hand, contends that at the time of the divorce, she did not have sufficient income with which to pay both the mortgage payment, and the debts assumed by the debtor, and still have enough money to pay for her necessities. She also contends that the debtor knew this when he agreed to assume the debts and part of the mortgage payment. Thus, she contends, both parties intended to create a support obligation.

The Court concludes that this scenario was addressed in *Smith*. There, Judge Spector stated:

Indeed, the actual need for support will generally be the only reliable evidence of an intent to provide support. *See, e.g., In re Benich*, 811 F.2d 943, 945 (5th Cir.1987) (affirming the bankruptcy court's finding of an intent to provide support based in part on the recipient spouse's bleak employment prospects, notwithstanding the debtor's uncontradicted testimony that he "never intended ... to pay alimony or support"). And since the determination of whether alleged support payments are in fact necessary for support is in essence an inquiry into effect, the issue of intent tends to subsume *Calhoun's* second test regarding the effect of the provision in question.

131 B.R. at 962 n. 5.

Here, the evidence overwhelmingly establishes that Mrs. Karpinski needed the debtor to undertake the obligations set forth in the divorce judgment, and the debtor knew of this need. He knew that Mrs. Karpinski did not earn much money, and that she did not have the ability to pay the entire monthly mortgage payment. He knew that Mrs. Karpinski needed him to assume the mortgage obligation to the extent of 45% per month, and the other obligations, in order for her to meet her daily needs. Therefore, as set forth in *Smith*, above, the Court concludes that both parties intended to create a support obligation in connection with the divorce.

### IV.

With respect to the second part of the *Calhoun* test, the evidence overwhelmingly indicates that Mrs. Karpinski needs the debtor to fulfill his obligations under the divorce decree in order for her to meet her daily needs. It is clear that Mrs. Karpinski lacks both the income and income-earning ability to make any of the payments that the debtor is obligated to make. Indeed, the debtor does not strongly dispute this conclusion. Thus, the Court concludes that the obligation has the effect of providing the support necessary to ensure that Mrs. Karpinski's daily needs are satisfied.

### V.

With respect to the third part of the *Calhoun* test, there is no evidence whatso-

ever from which the Court could find that these obligations are so excessive that they are manifestly unreasonable under traditional concepts of support. Instead, the evidence, especially the evidence from the attorneys who represented the parties at the time of the divorce, overwhelmingly establishes that the settlement was manifestly reasonable to both parties, if not favorable to the debtor. Thus, the court concludes that the amount of support is not so excessive that it is manifestly unreasonable.

Because the tests set forth in *Calhoun* are satisfied, the Court concludes that the debtor's obligations under the divorce judgment are nondischargeable.

## VI.

This conclusion is supported by *Singer*. In that case, the debtor, pursuant to a separation agreement, agreed to pay his wife $800 per month for the first 5 years, and $400 per month for the following 5 years. In determining whether this obligation was nondischargeable under § 523(a)(5), the court identified three basic scenarios arising from the statute:

> 1, if payment, i.e. Settlement Agreement, is for alimony, maintenance, or support, the debt is non-dischargeable; 2, conversely, if the payment, or Settlement Agreement is strictly a property settlement, the debt is dischargeable; 3, where there is a property settlement in connection with alimony, maintenance, or support, the debt is non-dischargeable.

787 F.2d at 1034.

The court determined that the agreement was an example of the third scenario, and affirmed the lower court's determination that the debt was nondischargeable.

The present case is also an example of this third scenario. Although all that the parties were doing was dividing the property between them, as *Singer* suggests, where the property settlement has the effect of and is done with the intent to provide support for the non-debtor spouse, the obligation is nondischargeable.

A leading treatise, *Collier Family Law and the Bankruptcy Code,* also supports this conclusion. The Collier treatise states:

> Probably the most important factor looked to by courts deciding the dischargeability of marital obligations, both to assess the intentions of the parties and to decide whether the actual function of an obligation is to provide support, is the financial situation of the parties at the time the obligation is agreed upon or decided by a court. If the obligee spouse or former spouse would have had difficulty in providing for himself or herself and the children of the parties, if any, absent the obligation, it is likely that the obligation will be found to be in the nature of alimony or support regardless of how it is structured or labeled.

*Henry J. Sommer & Margaret Dee McGarity, Collier Family Law and the Bankruptcy Code* ¶ 6.04[4] (Lawrence P. King ed., 1992). In its discussion of hold harmless agreements and agreements to pay marital debts, the treatise states:

> Generally, when the agreement appears to be a result of the parties' imbalance in income, expenses and earning capacity, and when the failure of the debtor to pay would impair the nondebtor spouse's ability to maintain his or her expected standard of living or support the couple's children, the obligation to pay debts or hold the nondebtor spouse harmless is found in the nature of support.
>
> . . . .
>
> To a large extent, the issue may turn on the effects on the nondebtor spouse that will result if the debtor spouse does not pay the debt. If the debt is for mortgage payments the nondebtor could not have afforded, and the result of nonpayment would be foreclosure causing loss of shelter for the debtor's former spouse and children, the debt will be found in the nature of support.

*Id.* ¶ 6.05[5] (footnote omitted).

## VII.

The Court concludes that the obligations assumed by the debtor constitute support or maintenance of his ex-wife in connection

with a divorce decree, and are therefore nondischargeable under § 523(a)(5).