of the second element of *Ledford* has been satisfied.

■ The second element of *Ledford* also requires the Plaintiffs to prove that Mr. Boone made the false representations while acting on behalf of the joint venture in the ordinary course of the business. When the misrepresentations were made, Shur–Bilt was in the business of home construction and Mr. Boone was responsible for selling and constructing houses for the business. The Plaintiffs' contract named the debtor and Shur–Bilt as the seller and was signed by Mr. Boone as an "authorized representative." Moreover, the debtor admits that he, Boone, and Cornett operated the business as a joint venture.[10] Furthermore, Mr. Boone testified that the note and deed of trust named Boone and Cornett instead of Shur–Bilt because they had been responsible for the paperwork and because Shur–Bilt had not been incorporated. Accordingly, the court finds that the second element of *Ledford* has been satisfied.

■ The Plaintiffs have also presented evidence sufficient to satisfy the last element of *Ledford*. *Ledford* provides that an innocent debtor-partner can benefit from his partner's fraud if the funds received as a result of the fraud were used to finance a project from which the debtor stood to profit. 970 F.2d at 1561. According to the agreement between the debtor and his partners, the debtor stood to profit from the Plaintiffs' contract once the construction was completed and payment was received. Although the note and deed of trust do not name the debtor or his business as a party, the debtor's partners did not divert the proceeds from the assignment for their own use. Instead, they used the proceeds to finance construction projects from which the debtor stood to profit. *See id.* Furthermore, the contract specifically stated that it was executed in connection with a note and deed of trust in favor of the debtor and Shur–Bilt. The partners' actions in not complying with this contract provision and making the note payable to them in their individual capacities might support an action by the debtor against his partners; however, it will not support the debtor's defense against the Plaintiffs for purposes of determining dischargeability.

■ The Plaintiffs originally asked the court to determine the amount of damages owed by the debtor or, in the alternative, to establish a constructive trust. The parties agreed at trial to rely on the Chancery Court of Roane County, Tennessee, for a determination of the amount of the debtor's obligation. As to the Plaintiffs' alternative argument, the Sixth Circuit has directed that a bankruptcy court may only impose a constructive trust if one was established by a state court under state law prior to bankruptcy. *XL/Datacomp, Inc. v. Wilson (In re Omegas Group, Inc.),* 16 F.3d 1443, 1450–53 (6th Cir.1994). According to *Omegas,* the only remedy available here is for the debtor's potential debt to be declared nondischargeable. *See id.* at 1453.

Based on the foregoing, a judgment will be entered that any amount owed by the debtor to the Plaintiffs in relation to the contract, note, and deed of trust executed by the debtor's partners and the Plaintiffs on August 24, 1992, shall be nondischargeable under § 523(a)(2)(A). A discussion of the Plaintiffs' second theory under § 523(a)(4) is unnecessary.

Jody **THORP**, Plaintiff/Appellee,

v.

Marvin **THIRTYACRE**,
Defendant/Appellant.

No. 93–4068.

United States District Court,
C.D. Illinois.

Nov. 16, 1993.

---

10. *See supra* note 4.

Stephen Fieweger, Rock Island, IL, for plaintiff/appellee.

Gregory McHugh and Mark Appleton, Aledo, IL, for defendant/appellant.

## ORDER

MIHM, Chief Judge.

Pending before this Court is Appellant Marvin Thirtyacre's ("Thirtyacre") direct appeal from the bankruptcy court pursuant to Rule 8001 of the Federal Rules of Bankruptcy Procedure, Title 11 of the United States Code. At issue on this appeal is whether Thirtyacre's tort debt should be discharged under 11 U.S.C. § 523(a)(6). For the reasons set forth below, this Court finds that Thirtyacre's debt is not dischargeable in bankruptcy.

## BACKGROUND

On April 24, 1991, the Mercer County Circuit Court, after entry of default judgment and an evidentiary hearing on damages, entered a judgment in Appellee Jody Thorp's ("Thorp") favor in the amount of $25,000 plus court costs against Thirtyacre. Thirtyacre then filed a Chapter 7 case in bankruptcy court. Thorp filed this adversary proceeding to have the judgment debt declared nondischargeable as a willful and malicious injury under § 523(a)(6) of the Bankruptcy Code. On May 19, 1993, the bankruptcy court held that Thirtyacre's actions were willful and malicious under 11 U.S.C. § 523(a)(6), and therefore, Thirtyacre's debt was non-dischargeable in bankruptcy, 154 B.R. 497. Thirtyacre appealed to this Court.

The debt in this case arose as a result of actions that occurred on December 21, 1988. At that time, Thirtyacre was sheriff of Mercer County, Illinois. On and prior to December 21, 1988, Thirtyacre suffered from depression and was receiving counselling at the V.A. Hospital in Iowa City for depression and martial problems. Thirtyacre's depression was partially caused by his suspicion that his wife, Caryn, was having an affair with Jim Brokaw ("Brokaw"), the Chief of Police for the City of Aledo, Illinois. As part of his treatment for depression, Thirtyacre was prescribed the drug Pamelor. Thirtyacre was instructed not to consume alcohol while taking Pamelor. However, on the afternoon of December 21, 1988, Thirtyacre started drinking alcoholic beverages.

Sometime prior to the incident on December 21, 1988, Thirtyacre obtained a tape recording of a telephone conversation between Brokaw and Caryn. On December 20, 1988, Thirtyacre saw Brokaw and Caryn driving in the same direction in separate cars. These incidents contributed to Thirtyacre's belief that Brokaw and his wife were having an affair. During this same period of time, Brokaw was dating Appellee Thorp.

On December 21, 1988, Thirtyacre and his wife had an argument, and Thirtyacre began drinking that afternoon. Thirtyacre then returned home, challenged his wife about Brokaw, sought a denial from her of her affair with Brokaw, and her. Later that night,

Thirtyacre went to Thorp's residence in Aledo, Illinois to find Brokaw. No one was present, and Thirtyacre broke into Thorp's home by kicking in the back door. Thirtyacre then drove to the Aledo police station to find Brokaw.

Brokaw and Thorp returned to Thorp's residence between 11:15 and 11:30 p.m. and found that Thorp's back door had been kicked in. Brokaw then called the Aledo police department to report the incident, and a telephone conversation between Brokaw and Thirtyacre occurred. During this telephone conversation, Thirtyacre threatened to return to Thorp's home to physically attack Brokaw.

Thirtyacre then drove back to Thorp's residence. Thorp was in her front yard walking her dog. Thorp repeatedly requested that Thirtyacre leave her residence. Thirtyacre screamed and yelled obscenities at Thorp, informing Thorp that he would not leave until he saw Brokaw. Thirtyacre then struck Thorp on the right side of her face and neck, pushing Thorp into Thirtyacre's vehicle. Thirtyacre also grabbed and choked Thorp around the neck. The Aledo police arrived and subdued Thirtyacre.

## DISCUSSION

In bankruptcy, "exceptions to discharge are to be construed strictly against a creditor and liberally in favor of a debtor." *In re Scarlata,* 979 F.2d 521, 524 (7th Cir. 1992), *quoting In re Zarzynski,* 771 F.2d 304, 306 (7th Cir.1985). The burden is on the objecting creditor to prove exceptions to discharge. *Id.* A district court reviewing a decision of the bankruptcy court accepts the bankruptcy court's findings of fact unless they are clearly erroneous. *In re Kimzey,* 761 F.2d 421, 423 (7th Cir.1985). However, this clearly erroneous standard does not apply to the this court's review of the bankruptcy court's conclusions of law. *Id.*

11 U.S.C. § 523(a)(6) provides that a debtor is not discharged from any debt "for willful and malicious injury by the debtor to another entity or the property of another entity." 11 U.S.C. § 523(a)(6) (1982).

Thirtyacre claims that on the night in question, he was unable to form the intent to act willfully and maliciously because of his depression and the simultaneous use of Pamelor and alcohol. Thirtyacre relies on 11 U.S.C. § 523(a)(9), which limits drunk driving damage discharges in bankruptcy. Thirtyacre argues that Congress' failure to address other situations involving intoxication illustrates that drug or alcohol incapacitation is a valid defense in non-driving situations. Thirtyacre contends that by adopting § 523(a)(9), Congress by implication affirmed the validity of the use of such a defense under § 523(a)(6). According to Thirtyacre, the failure of Congress "to address other situations involving intoxication shows that the 'willful and malicious standard' cannot now be used to deny the remedial discharge for incapacitation in non-driving situations."

This Court refuses to adopt a general rule providing that a drunk or drugged debtor would never be liable for his/her actions under § 523(a)(6). This Court also declines to conclude that alcohol or drug influence would never be a valid defense to a dischargeability action. Instead, this Court has examined the specific facts of this case and, based on those facts, rejects Thirtyacre's argument that he failed to form the requisite intent because of his depression and use of alcohol while taking the prescription drug Pamelor.

Next, Thirtyacre argues that the bankruptcy court erred by not making Thorp meet her burden of proving an intentional act by clear and convincing evidence. Thorp argues that a creditor must prove by a preponderance of the evidence that a debtor caused a willful and malicious injury to the creditor. In *Grogan v. Garner*, the Supreme Court held that the standard of proof for the dischargeability exceptions in 11 U.S.C. § 523(a) is the preponderance of the evidence standard. *Grogan v. Garner*, 498 U.S. 279, 290–91, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991). Therefore, Thirtyacre's position is incorrect.

Thirtyacre also argues that Thorp did not meet her burden of proving a willful and malicious act by Thirtyacre. The term "willful" means "deliberate or intentional" and "malicious" means "wrongful and without cause or excuse." *In re Nunez*, 95 B.R. 566, 568 (Bkrtcy.N.D.Ill.1978). This Court has held that no proof of intent to do harm is required for non-dischargeability under § 523(a)(6). *In re Hallahan*, 113 B.R. 975 (C.D.Ill.1990), *aff'd* 936 F.2d 1496 (7th Cir. 1991). This court finds that Thorp satisfied her burden of proving a willful and malicious act by a preponderance of the evidence.

Specifically, Thirtyacre argues that Thorp did not meet her burden of proving an intentional act because the evidence demonstrates that Thirtyacre "never before acted in such a manner" and "no one ever saw [Thirtyacre] act that way previously." Thirtyacre claims he was "a man for the first time out of control."

This Court agrees with the bankruptcy court's determination that on the day and night in question Thirtyacre "showed a pattern associated with a person who knew what he was doing." Bankruptcy Opinion at 17. On the afternoon of December 21, 1988, Thirtyacre began drinking at the VFW Club and later had a fight with his wife at their home in which he struck his wife. Thirtyacre drove to Thorp's residence to confront Brokaw. When no one answered, Thirtyacre kicked in Thorp's back door. Thirtyacre then drove to the Aledo police station to find Brokaw. While at the police station, Thirtyacre spoke with Brokaw on the telephone and threatened to return to Thorp's residence to attack Brokaw. Thirtyacre did return to Thorp's residence to find Brokaw.

As the bankruptcy court found, it is difficult to accept Thirtyacre's argument that he was "completely out of control" at the time of the assault and battery of Thorp, yet was able to drive from a tavern, to his home, to Thorp's home, to the police station, and then back to Thorp's home. Thirtyacre was understandably upset and angry over his suspicion that his wife and Brokaw were having an affair, but this does not excuse his deliberate and intentional conduct. Thirtyacre clearly wanted to find and confront Brokaw on the night of December 21, 1988. However, when Thorp got in Thirtyacre's way, he intended to strike Thorp.

Moreover, this Court finds unpersuasive Thirtyacre's argument that since he had never acted in this way before, his actions were not intentional. Simply because Thirtyacre had never acted in a similar manner in the past does not prove that Thirtyacre did not intend to strike Thorp on the night of December 21, 1988.

In Thirtyacre's Reply Brief, he argues that Thorp grabbed him first and the pushing away of Thorp by Thirtyacre "was merely a reactive manner." The bankruptcy court did not find that Thorp grabbed Thirtyacre first. The bankruptcy court stated, "The Plaintiff attempted to intercede, and an altercation ensued between the Plaintiff and the Defendant, with the Defendant striking the Plaintiff." Bankruptcy Opinion at 2. This Court upholds findings of fact unless they are clearly erroneous. Thirtyacre relies on Thorp's own testimony to prove that Thorp grabbed Thirtyacre first:

Q. Okay. Isn't it true that when he [Thirtyacre] first pulled in your driveway, your grabbed him?

A. No, I didn't grab him. I reached for his shirt to push him back and say he was on private property.

Q. But you did grab the collar of his shirt, correct?

A. I touched the collar of his shirt. I probably did not grab it. I wouldn't do that.

Q. Well, there's been admitted into evidence I have had state police reports of this accident, and on page five there's an interview with you. It states in that interview that you grabbed his collar.

A. Well, maybe I used the wrong terminology. I wouldn't grab anybody's collar, especially a man's. Why would I do that?

Q. You used the wrong terminology today or back then?

A. I probably reached out and touched his shirt to tell him he was on private property, so probably back then.

Thorp's testimony does not convince this Court that the bankruptcy court's failure to find that Thorp grabbed Thirtyacre first was clearly erroneous.

Finally, Thirtyacre distinguishes cases relied on by the bankruptcy court from the facts of this case. These factual distinctions do not change this Court's decision.

THEREFORE, this Court AFFIRMS the bankruptcy court's decision on non-dischargeability.